IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVID MEDINA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-1199 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Plaintiff's Motion for Summary Judgment and Memorandum in Support (Document Nos. 18 & 19) and Defendant's cross Motion for Summary Judgment and Memorandum in Support. (Document Nos. 15 & 16). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, the Defendant's Motion for Summary Judgment is DENIED, and this case is REMANDED to the Commissioner of the Social Security Administration for further proceedings.

**I. Introduction**

Plaintiff David Medina ("MEDINA") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").  Medina alleges that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, and that the ALJ's findings of fact are contrary to law and regulation. Medina argues that: (1) the ALJ's step three decision is unsupported by substantial evidence as Medina met or equaled Listing 1.04, Disorders of the Spine, 20 C.F.R. Pt. 404, Subpt. P, App. 1; (2) the ALJ erred as a matter of law in his analysis of Medina's Residual Functional Capacity ("RFC"); (3) the ALJ erred in failing to give weight to the medical opinions of treating physicians; and (4) substantial evidence supports that, at the very least, a directed verdict of disabled was warranted pursuant to Medical Vocational Rule 201.10.   (Document No. 19).  The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision and that it should therefore be affirmed.  (Document No. 20).

**II.  Administrative Proceedings**

Medina filed his disability application on August 26, 2005, alleging disability since July 18, 2005.  (Tr. 18, 27, 70-72).  Medina's claim is based upon severe lumbar and cervical degenerative disc disease, hypertension, and injury to Medina's back and shoulder.  (Tr. 20, 124).  The Social Security Administration denied Medina's application initially on October 14, 2005, and upon reconsideration on March 2, 2006, concluding that his condition was not expected to remain severe enough for twelve consecutive months and would not prevent him from performing his previous job. (Tr. 28, 29-35, 36, 38-42).  Subsequently, Medina requested a hearing before the ALJ.  (Tr. 18, 43). The Social Security Administration granted his request and the ALJ, William B. Howard, held a hearing on April 11, 2007.  (Tr. 55, 328).  On July 26, 2007, the ALJ issued an unfavorable decision to Medina finding him not disabled.  (Tr. 15-25).

2

The ALJ found that Medina met the insured status requirement of the Social Security Act through December 31, 2008. (Tr. 20). At step one, the ALJ concluded that Medina had not engaged in substantial gainful activity since the alleged onset date of July 18, 2005, even though Medina testified that he worked as a merchandise marker at a Ross clothing store beginning April 2007. *Id.* At steps two and three the ALJ concluded that Medina had hypertension, status post injured back and shoulder, and degenerative disc disease of the cervical and lumbar spine, all of which are severe impairments within the meaning of the Act, but that these impairments did not meet or equal the requirements of a listed impairment. *Id.* At step four the ALJ concluded that Medina had an RFC to perform limited light work and was therefore unable to perform his past relevant work, which is categorized as heavy skilled, and medium, semiskilled. (Tr. 21, 23). At step five, the ALJ used vocational expert ("VE") testimony to conclude that jobs exist in the national economy that Medina can perform. (Tr. 24).

On July 26, 2007, Medina sought review by the Appeals Council of the ALJ's unfavorable decision. (Tr. 14). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. §§ 404.970, 416.1470. On February 28, 2008, the Appeals Council denied Medina's request for review, and the ALJ's decision thus became final. (Tr. 5).

Medina filed a timely appeal of the ALJ's decision. 42 U.S.C. 405(g). Medina then filed a Motion for Summary Judgment and Supporting Brief. (Document Nos. 18 & 19). The Commissioner also filed a Motion for Summary Judgment and Supporting Brief. (Document Nos.

3

15 & 16). This appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues *de novo*, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparro v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance."

*Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV. Burden of Proof

An individual claiming entitlement to DIB under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found that Medina, despite his severe impairments and limitations, could perform a limited range of light work, only requiring lifting/carrying ten pounds occasionally, and less than ten pounds frequently. (Tr. 21). The ALJ further found that Medina can stand, walk, and sit for about six hours per activity, per eight hour day. Id. Medina can only bend forty-five degrees which is the extent to retrieve something from a table top. *Id.* Additionally, the ALJ noted that Medina cannot lift his dominant right arm, he needs the option to use a back brace and sit at his workstation, and he can occasionally stoop, bend, crouch, crawl, and kneel. *Id.* Within this limited

ability to perform light work, the ALJ concluded at step five that Medina could do jobs such as toll collector or parking lot cashier. (Tr. 24). The Court must determine in this appeal whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

### A. Objective Medical Evidence

The objective medical evidence shows that Medina had two work related accidents which caused injuries to his back and shoulder; the first on April 25, 2002 and the second on July 18, 2005. (Tr. 162, 196). The first injury was the result of a motor-vehicle accident while at work, in which Medina was the restrained front seat passenger. (Tr. 162). The accident caused the head and torso to be violently jerked, resulting in progressively worsening back pain. *Id.* Medina was treated with three months of physical therapy. *Id.* Due to persistent neck pain, occasional left arm numbness, and back pain with occasional paresthesias, Medina was seen for an orthopedic consultation at Lonestar Orthopedics, at the request of Dr. Bergeron on July 31, 2002. *Id.* The MRI of the cervical and lumbar spine on June 26, 2002 revealed herniated nucleus pulposus at C4-5, C5-6, and C6-7 resulting in stenosis, bulging disc at L2-3, bilateral S1 joint strain, and lumbar strain. (Tr. 163). A mixture of Lidocaine and Kenalog were injected into the S1 Joint, and the treatment plan consisted of epidural steroid injections to the cervical spine, physical therapy, and anti-inflammatory medication. *Id.*

Medina continued his physical therapy and epidural steroid injections on subsequent visits to Lonestar Orthopedics on August 28, 2002, October 10, 2002, November 21, 2002, January 2, 2003, and February 13, 2003. An orthopedic report dated February 13, 2003, revealed tenderness to palpitation from C6-T3 as well as L3-S1. (Tr. 143). The impression on this date again reflected herniated nucleus pulposus at C4-5, C5-6, and C6-7, annular bulge at L2-3, and right sacral iliac joint strain. *Id.* During the visit, Medina complained of worsening lower back pain, which he rated as 9/10, ten being severe, and neck pain as 7/10. *Id.* Dr. Berliner, with Lonestar Orthopedics, continued Medina on his treatment plan consisting of physical therapy to prevent further deconditioning and to strengthen the muscles around the spine, and epidural steroid injections to decrease the inflammation around the discs. (Tr. 144). Medina endeavored to cope with his impairments for the next couple of years. (Tr. 321).

On April 29, 2005, Medina was taken by ambulance to Houston Northwest Medical Center due to chest tightness and pain radiating down his left arm. (Tr. 181). The CT Scan of the chest came back negative, but the attending physician, Charles H. Moore, also noted risk factors such as hypertension the past three years and lumbar pain. (Tr. 186, 192). A follow up chest x-ray revealed mild anterior degenerative changes of the dorsal spine. (Tr. 167).

On July 18, 2005, Medina suffered injury to his lumbar and cervical spines, as well as his back and shoulder, when he fell twenty-five feet from a roof onto his back in a work-related accident. (Tr. 196). Medina lost consciousness and was taken by ambulance to Ben Taub Hospital. (Tr. 203). A CT Scan of Medina's abdomen reflected a small hiatal hernia and L5 spondylolsis. (Tr. 247, 268-269).

An MRI of the cervical spine on August 17, 2005, reflected the following Impression:

> 1. At C2-3, a 1-mm posterior protrusion mildly indents the sac.
> 2. At C3-4, a 2-mm posterior protrusion mildly indents the sac.
> 3. At C4-5, a 2-mm posterocentral protrusion effaces the subarachnoid space. There is mild central canal stenosis and mild left foraminal narrowing.
> 4. At C5-6, a 2-2-mm posterocentral protrusion effaces the subarachnoid space. There is mild central canal stenosis and mild left foraminal narrowing.

(Tr. 199-200). Also, An MRI of the lumbar spine on August 17, 2005, reflected the following Impression:

> 1. There is a mild acute compression fracture of L1. There is a bony ten percent loss of height anteriorly.
> 2. At L1-2, There is no retropulsion. No focal protrusion, central canal stenosis or remarkable foraminal narrowing is present.
> 3. At L2-3, a 2mm broad-based posterior protrusion mildly indents the sac. A superimposed 5-mm far left posterolateral protrusion effaces and displaces the emanating L2 nerve root sleeve/dorsal root ganglion. There is moderate left foraminal narrowing.
> 4. At L3-4, a 2-mm broad based posterior protrusion mildly indents the sac.
> 5. At L5-S1, there are pars defects.

(Tr. 202).

The diagnosis made by Houston Injury Rehabilitation based on the above MRI was a compression fracture of L1, Lumbar Intervertebral Disc Disorder, Cervical Intervertebral Disc Disorder, and Myalgia and/or Myositis. (Tr. 197). A physical evaluation noted that Medina was ambulating with a cane and wearing a hard cervical collar. (Tr. 196). Medina reported that he was experiencing sharp pains which radiated down his right leg. *Id.* The pains were constant and affected his sleep. *Id.* Evident upon examination was severe tenderness upon palpation of the cervical, lumbar, and thoracic regions, straight leg raise was positive on the right side, but deep tendon reflexes, sensory, and motor strength were within normal limits. (Tr. 197). The treatment plan, designed by Dr. Buendia of Houston Injury Rehabilitation, consisted of electric muscle stimulation, phonophoresis, massage therapy, and therapeutic exercise three times a week.

(Tr. 197). Medina's prognosis was noted as guarded by Dr. Buendia, due to the formation of scar tissue in the cervical and lumbar spines, as a result of the serious injury sustained on July 18, 2005. (Tr. 198). Additionally, moderate to severe pain was being felt by Medina due to unstable joint complexes noted in the August, 25, 2005 narrative report. *Id.* Dr. Buendia advised that Medina was still in need of continued medical treatment and he was unable to return to work. *Id.*

On February 21, 2006 Medina sought medical attention for right shoulder pain, and was diagnosed as having impingement syndrome in his right shoulder. (Tr. 290). On March 10, 2006, Medina sought further treatment for his back and it was again noted that he was unable to return to work due to his pain. (Tr. 229). Additionally, on March 22, 2007, Medina still had a restriction from lifting heavy weight from his right hand due to his medical condition. (Tr. 304).

Medina underwent a consultive examination for disability evaluation on May 14, 2007, by Dr. Bernard Albina. (Tr. 312). X-rays were used for the examination rather than an MRI. *Id.* The examination of the right shoulder showed tenderness in the subdeltoid area, with restriction of abduction and flexion of the right shoulder to ninety degrees. (Tr. 313). The radiological findings of the right shoulder showed suspected posttraumatic bursitis and possible injury to the rotator cuff tendon. *Id.* The report also stated that the possibility of surgery is undeterminable until an MRI is performed. *Id.* The examination of the cervical spine showed moderate tenderness and restriction of rotation of the neck to the right to seventy degrees and to the left to eighty degrees. *Id.* Additionally, x-rays of the cervical spine showed no evidence of spondylolisthesis or fractures, and minimal degenerative changes were observed. *Id.* The x-rays of the lumbar spine showed a healed compression fracture at L1. *Id.*

Medina was prescribed medications for his pain such as Hydrocodone-500 mg and

Cyclobenzaprine-10 mg, which caused drowsiness and dry mouth. (Tr. 115, 285). For hypertension he was prescribed Quinapril-20 mg, which caused drowsiness, tiredness, unusual muscle pain, cramps, weakness, nausea, and ringing in the ears. (Tr. 117). Medina was prescribed several other medications such as anti-inflammatory drugs, and medication for heartburn and acid reflux. (Tr. 284-285).

Having reviewed the objective medical record and medical diagnoses, it is clear that Medina suffers from severe back pain that originated from two on-the-job injuries in 2002 and 2005. The MRIs have revealed degenerative disc disease, multilevel cervical and lumbar disc herniations, one of which effaces and displaces the L2 nerve root. (Tr. 201). Medina is severely limited by the trauma to his right shoulder, which still needs an MRI to be conclusive as to the damage caused. Medina also suffers from hypertension. Additionally, Dr. Buendia, as well as Medina's physical therapist, Carrie Moore, both advised that Medina not return to work. (Tr. 198, 229). An examination of the full medical record suggests that all of the objective evidence was not taken into consideration by the ALJ in determining Medina's RFC. Therefore, the objective medical evidence factor does not support the ALJ's decision.

### B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings.

11

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995)). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez,* 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of medical opinions. Under 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a physician's opinion must be based on:

(1)　the physician's length of treatment of the claimant,

(2)　the physician's frequency of examination,

(3)　the nature and extent of the treatment relationship,

(4)　the support of the physician's opinion afforded by the medical evidence of record,

(5)　the consistency of the opinion with the record as a whole, and

(6)　the specialization of the treating physician.

*Newton,* 209 F.3d at 456. While opinions of treating physicians need not be accorded controlling

weight on the issue of disability, in most cases such opinions must at least be given considerable deference. *Id.* Again, the Social Security Regulations provide guidance on this point. Social Security Ruling 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg.34490 (July 2, 1996). With regard to the weight to be given "Residual Functional Capacity Assessments and Medical Source Statements," the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 ... providing appropriate explanations for accepting or rejecting such opinion." *Id.* The Fifth Circuit adheres to the view that before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R.§ 404.1527(d). *Newton,* 209 F.2d at 456. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). However, perfection in administrative proceedings is not required. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Based on the diagnoses of Dr. Buendia and Dr. Albina, as well as the testimony of the Medical Expert ("ME"), Medina argues that his RFC for limited, light work is not supported by substantial evidence. Dr. Buendia, from Houston Injury Rehabilitation advised that Medina was not to return

13

to work due to the injury sustained on July, 18, 2005. (Tr. 198). His prognosis was guarded due to the formation of scar tissue in the cervical and lumbar spines. *Id.*

The ME, Dr. Beard, stated,

> "Well, I believe for practical clinical purposes, Your Honor, the record confirms two or three disease processes that could and likely would lead to some degree of functional impairment. First of these is the hypertension, which has been ongoing and treating - - and treated. There's also been some chest pain, which I believe has impressed the doctors as being non-cardiac chest pain. But the most important things is that there's a *constellation of injuries* and the consequences [INAUDIBLE] of those injuries that occurred in the fall injuring the back and probably the shoulder."

(Tr. 352)(emphasis added). Additionally, Dr. Beard stated, "... the combined lumbar and cervical disk disease I would think that- - well, let me say probably for the first couple years he [would] probably have to be sedentary particularly with that compression fracture." *Id.* Additionally, when asked about Medina's right shoulder, Dr. Beard stated, "It would be my opinion that there were some - - most likely some direct shoulder injury. Some internal derangement of that shoulder." (Tr. 354).

The final impression given by Dr. Albina, from Orthopaedic Associates, was suspected postraumatic bursitis of the right shoulder and possible injury to the rotator cuff tendon, as well as resolving cervical strain and resolving healed fracture of L1. (Tr. 313). Dr. Albina also noted in Medina's history that he had bulging discs in his neck and his back, and a suspected compression fracture of L1 vertebra. (Tr. 312).

The medical opinions of Dr. Beard, the ME, Dr. Buendia, and Dr. Albina combined, weigh heavily against the finding of the ALJ. An RFC for limited, light range work is inconsistent with the above diagnoses and medical opinion that Medina would have been restricted to sedentary work due to his injuries. As a result, the diagnosis and expert medical opinion factor does not support the

ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Medina testified about his condition. Due to the trauma from his fall, Medina stated that he has problems with his right shoulder and has a hard time lifting anything that is ten to fifteen pounds. (Tr. 335). Medina stated that he cannot even move his right arm up to shoulder level. *Id.* Medina stated that bending over causes excruciating pain. (Tr. 336). Sometimes he experienced pain and

tingling in his legs or pain that went into his legs. *Id.* Additionally, Medina testified that after walking about one block he would have pain in his lower back, and standing for approximately forty-five minutes also produced pain. (Tr. 341). When asked if he could carry around a gallon of milk for two-three hours out of an eight hour day, Medina stated that he could not do so without going into pain. *Id.* Additionally, Medina said that there are about eight days of the month in which he cannot leave his bed due to the pain. (Tr. 342-343). He said this occurs sometimes following physical activity and in order to cope he takes Hydrocodone and Naproxen which cause severe drowsiness. (Tr. 343). He stated that sometimes he has a hard time breathing and feels as if his head is going to explode and would see stars around him, which he thinks is due to his hypertension. (Tr. 344). As far as helping around the house, Medina would occasionally grocery shop, go to the store, drive, and attend religious ceremonies. (Tr. 348-349).

       The ALJ concluded in conclusory fashion that Medina's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. This conclusion was made despite the fact that Medina's medically determinable impairments could be expected to produce such symptoms. (Tr. 22). Consequently, the ALJ disregarded much of Medina's testimony when determining his RFC. Medina testified that he could only walk one block, but the ALJ conversely found that Medina could walk for six hours out of an eight hour workday. (Tr. 21). Additionally, Medina stated that he could stand approximately forty-five minutes, but the ALJ determined that he could stand for six hours out of an eight hour workday. *Id.* The ALJ also did not take into consideration the sedative effects of the 500 mg tablets of Hydrocodone that Medina routinely takes. (Tr. 115).

       Credibility determinations, such as that made by the ALJ in this case in connection with

Medina's subjective complaints of pain and total disability, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert denied*, 514 U.S. 1120 (1995). *See also Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (claim of disability less credible when no physician on record has stated that claimant was physically disabled).

Here, the ALJ found that the objective medical evidence was not supportive of Medina's testimony of his severity of physical limitations. (Tr. 23). However, during questioning of the ME by Medina's attorney, the ME stated that "... So far as the compression fracture of the vertebra is concerned those things do take a long time to heal and they produce a lot of pain." (Tr. 355). The ME also stated that the medical evidence reflected postural and manipulative limits. (Tr. 356). When asked how far over Medina could bend, the ME responded, "Well, that should be symptom limited. In other words, if he bends over forty-five degrees and he has pain doing it he should be advised not to do it." *Id.* Additionally, after the 2005 injury, Medina's prognosis was noted as guarded by Dr. Buendia due to the formation of scar tissue in the cervical and lumbar spines as a result of the serious injury and he was therefore advised not to return to work. (Tr. 198). Because the record shows that the ALJ failed to properly support his credibility determination, this factor weighs against the ALJ's decision.

**D. Education, Work History, and Age**

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

The record shows that Medina, was fifty years of age when he applied for disability which is defined as "an individual closely approaching advanced age." 20 C.F.R. 404.1563. Medina has less than a high school education, only completing through grade ten. (Tr. 321). Medina has a consistent work history as an electrician's apprentice and as a maintenance repair worker. *Id.* Medina began working again in April of 2007, in a limited function, with a different employer and different type of work. *Id.* Medina has not engaged in substantial gainful activity since July 18, 2005. (Tr. 20).

The ALJ, having determined that Medina could perform a limited range of light, unskilled work, relied on the testimony of the VE for his finding that Medina could perform jobs such as toll collector or parking lot cashier. (Tr. 362). Because the ALJ did not properly consider the expert medical opinions, and Medina's subjective complaints of pain, the ALJ's RFC determination is not supported by substantial evidence. As a consequence, the ALJ's ultimate determination that Medina is not disabled is flawed.

**VI. Conclusion and Order**

Based on the foregoing, it is the opinion of this court that the ALJ erred in his analysis of Medina's RFC and erred in failing to give proper weight to the medical opinions of treating physicians. Those errors resulted in a decision that is not supported by substantial evidence. Therefore, this Court

ORDERS that Plaintiff's Motion for Summary Judgement (Document No. 18) is GRANTED, Defendant's Motion for Summary Judgment (Document 15) is DENIED, and this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings,

including additional consideration of the expert medical opinions and Medina's subjective complaints.

Signed at Houston, Texas, this 7th day of July, 2009.

_____
Frances H. Stacy
United States Magistrate Judge